No. 25-1574

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

BETHANY M. HALL,

*Plaintiff-Appellant,*

v.

A. SCOTT FLEMING, IN HIS OFFICIAL CAPACITY AS DIRECTOR OF
THE STATE COUNCIL OF HIGHER EDUCATION FOR VIRGINIA,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Eastern District of Virginia

**RESPONSE BRIEF OF THE DEFENDANT-APPELLEE**

JASON S. MIYARES
 *Attorney General*

THOMAS J. SANFORD
 *Deputy Attorney General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 371-0977 – Telephone

JACQUELINE C. HEDBLOM
 *Senior Assistant Attorney
 General/Trial Section Chief*

CHRISTOPHER P. BERNHARDT
ROBERT S. CLAIBORNE, JR.
 *Assistant Attorneys General*

 *Counsel for Defendant-Appellee*

July 31, 2025

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................... iii

INTRODUCTION ................................................................................... 1

JURISDICTIONAL STATEMENT ......................................................... 2

STATEMENT OF ISSUES ..................................................................... 2

STATEMENT OF CASE ......................................................................... 3

    I.   Virginia's Tuition Assistance Grant Program ............................ 3

    II.  The *Locke* decision and Washington's scholarship program ........................................................................................ 6

    III.  Factual Background ................................................................. 8

    IV.  Procedural History ................................................................. 10

STANDARD OF REVIEW ...................................................................... 12

SUMMARY OF ARGUMENT ................................................................. 12

ARGUMENT ........................................................................................... 14

    I.   *Locke* forecloses Hall's analogous claim. ................................ 14

    II.  The Supreme Court has not overruled *Locke*, and lower federal courts cannot overrule it. ........................................... 16

CONCLUSION ....................................................................................... 21

CERTIFICATE OF COMPLIANCE ........................................................ 22

CERTIFICATE OF SERVICE..................................................................23

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Agostini v. Felton*,
521 U.S. 203 (1997)................................................................ 17

*American Legion* v. *American Humanist Assn.*,
588 U.S. 19 (2019)................................................................ 20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................... 12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................... 12

*Carson v. Makin*,
596 U.S. 767 (2022)....................................... 11, 13, 19, 20

*Espinoza v. Montana Department of Revenue*,
591 U.S. 464 (2020)............................................... *passim*

*Evans v. Chalmers*,
703 F.3d 636 (4th Cir. 2012)............................................ 12

*Kennedy v. Bremerton School District*,
597 U.S. 507 (2022)............................................................... 20

*Lemon v. Kurtzman*,
403 U.S. 602 (1971)............................................................... 20

*Locke v. Davey*,
540 U.S. 712 (2004).............................................. *passim*

*Miller v. Ayres*,
198 S.E.2d 634 (Va. 1973).............................................. 16

*Palmer v. Liberty Univ., Inc.*,
Nos. 21-2390, 21-2434, 2023 U.S. App. LEXIS 18467 (4th
Cir. June 30, 2023)............................................................... 8

*Payne v. Taslimi,*
   998 F.3d 648 (4th Cir. 2021) ........................................................... 20

*Ray v. Roane,*
   948 F.3d 222 (4th Cir. 2020) ........................................................... 12

*Rodriguez de Quijas v. Shearson/Am. Exp., Inc.,*
   490 U.S. 477 (1989) ........................................................................ 17

*Tenet v. Doe,*
   544 U.S. 1 (2005) ............................................................................ 17

*Trinity Lutheran Church of Columbia, Inc. v. Comer,*
   582 U.S. 449 (2017) .............................................................. *passim*

*Va. Coll. Bldg. Auth. v. Lynn,*
   538 S.E.2d 682 (Va. 2000) ................................................................ 4

*Vlaming v. West Point Sch. Bd.,*
   895 S.E.2d 705 (Va. 2023) ............................................................. 15

**Statutes**

42 U.S.C. § 1983 ............................................................................... 10

Va. Code §§ 23.1-628 to -635 .............................................................. 3

Va. Code § 23.1-629 ............................................................................ 3

Va. Code § 23.1-631 ........................................................................ 3, 4

**Rules**

Fed. R. Civ. P. 12(b)(6) ..................................................................... 10

Fed. R. App. P. 32 ............................................................................. 22

**Other Authorities**

8 Va. Admin. Code § 40-71-10 ................................................. 3, 4, 5, 16

8 Va. Admin. Code §§ 40-71-10 to -70 ................................................. 3

8 Va. Admin. Code § 40-71-40 ............................................................ 4, 5

8 Va. Admin. Code § 40-71-50 ............................................................... 3

*CIP: The Classification of Instructional Programs*,
    https://tinyurl.com/bddmfyez ................................................................. 5

*CIP Code 39*, NCES.ED.GOV, https://tinyurl.com/bde7fkx7 ..................... 5

U.S. Const. amend. I ....................................................... 7, 10, 16

Va. Const. art. VIII, § 11 ............................................... 4, 15, 16

*Virginia Tuition Assistance Grant Program*,
    https://tinyurl.com/546btk6k ............................................................... 6

## INTRODUCTION

The district court correctly held that Virginia's Tuition Assistance Grant Program does not violate the First Amendment's Free Exercise Clause by denying Bethany M. Hall public funds to pursue a religious vocational degree. In *Locke v. Davey*, 540 U.S. 712 (2004), the Supreme Court addressed this exact issue and upheld a state's ability to prohibit state funds from going to postsecondary students pursuing religious vocational training.

*Locke* forecloses Hall's claim because her factual and legal situation is indistinguishable from that of the plaintiff in *Locke*, which Hall concedes. Both cases involve undergraduate students at private Christian colleges who chose to pursue religious vocational degrees and were denied state funding as a result. Both brought Free Exercise Clause challenges to the state laws that barred state funds from supporting students pursuing religious vocational degrees. Accordingly, the district court correctly held that *Locke* controls the outcome of Hall's case.

The district court also properly held that the Supreme Court has never overruled *Locke*. Rather, in the three recent Free Exercise Clause cases that Hall relies on, the Supreme Court has reaffirmed *Locke*'s core

holding that a state does not violate the Free Exercise Clause when it denies public funds to students seeking religious vocational degrees.

When the Supreme Court has not overruled its applicable precedent, lower federal courts should simply apply that precedent. As *Locke* directly applies to the claims and facts presented by Hall's case, the district court rightly granted the defendant's motion to dismiss for failure to state a claim.

This Court should affirm.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over Hall's constitutional claim via 28 U.S.C. § 1331. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

1.    Did the district court err in applying *Locke* to dismiss Hall's claim when, by her own admission, her factual and legal situation was directly analogous to that of the plaintiff in *Locke*?

2.    Did the district court err in following binding Supreme Court precedent that Hall admitted was still good law?

## STATEMENT OF CASE

### I.    Virginia's Tuition Assistance Grant Program

In 1972, the Virginia General Assembly passed the Tuition Assistance Grant Act. Va. Code §§ 23.1-628 to -635; JA8. The Act provides financial assistance to Virginia residents who choose to attend accredited, private, nonprofit colleges and universities in Virginia. JA8. The State Council of Higher Education for Virginia (SCHEV) is responsible for administering the Virginia Tuition Assistance Grant Program (VTAG Program), and it has promulgated regulations governing the VTAG Program. Va. Code § 23.1-629; 8 Va. Admin. Code §§ 40-71-10 to -70; JA8. Defendant-Appellant A. Scott Fleming is the director of SCHEV and is responsible for its operations. JA7–8.

For Virginia undergraduate students to be eligible for a grant under the VTAG Program, they must be "obligated to pay tuition as full-time . . . students at an eligible institution." Va. Code § 23.1-631(A); JA9. Students can use grant funds to pay for tuition, fees, room, board, books, supplies, and other education-related expenses. 8 Va. Admin. Code § 40-71-10 (definition of "Cost of Attendance"); 8 Va. Admin. Code § 40-71-50(B). Grants for undergraduate students are limited to four academic

years, may be used only toward associate or baccalaureate degrees, and may be used only for educational programs that do not constitute "religious training or theological education." Va. Code § 23.1-631(C); 8 Va. Admin. Code § 40-71-10 (definition of "Eligible Program"); 8 Va. Admin. Code § 40-71-40(D)(2); JA9.

The Supreme Court of Virginia has interpreted the terms "religious training" and "theological education," as used in Article VIII, Section 11, of the Virginia Constitution, which is the source of this language. *Va. Coll. Bldg. Auth. v. Lynn*, 538 S.E.2d 682, 689–90 (Va. 2000). "Theological education" has been construed as being "applicable to a seminary or other institution whose purpose is to prepare students for vocations associated with ordination, such as rabbi, minister or priest." *Id.* at 690. The phrase "religious training" is "applicable to institutions or departments within institutions whose purpose is preparation of students for religious vocations other than those associated with ordination." *Id.* The VTAG Program's limited prohibition on grant funding for religious vocational degrees is what Hall now characterizes as a prohibition on funding for programs that are "too religious." Opening Br. 1 & n.1.

Under SCHEV's regulations for the VTAG Program, students enrolled in undergraduate programs "that provide religious training or theological education, classified as [National Center for Education Statistics' Classification of Instructional Programs (CIP)] Code 39-series programs, are not eligible" for grants. 8 Va. Admin. Code § 40-71-10 (definition of "Eligible program"); 8 Va. Admin. Code § 40-71-40. The U.S. Department of Education's National Center for Education Statistics developed CIP Codes to support "the accurate tracking and reporting of fields of study and program completions activity." *CIP: The Classification of Instructional Programs*, NCES.ED.GOV (last accessed July 31, 2025), https://tinyurl.com/bddmfyez. CIP Code 39-series programs "prepare individuals for the professional practice of religious vocations." *Detail for CIP Code 39*, NCES.ED.GOV (last accessed July 31, 2025), https://tinyurl.com/bde7fkx7. A student who declares a double major that includes an eligible major and an ineligible CIP Code 39 major is still eligible to receive a VTAG grant so long as she does not take more classes in the ineligible major than those taken for the eligible major during any given semester. 8 Va. Admin. Code § 40-71-10 (definition of "Eligible Program"); JA24.

Students enrolled at sectarian colleges and universities in Virginia, such as Liberty University, Regent University, and Eastern Mennonite University, are eligible to participate in the VTAG Program if they meet the relevant qualifications.[1] JA9.

## II.   The *Locke* decision and Washington's scholarship program

In *Locke,* the state of Washington established a scholarship program to help gifted students pay for postsecondary education expenses. 540 U.S. at 715. Pursuant to statute and in accordance with Washington's constitution, however, students could not use this state-funded scholarship to pursue a devotional-theology degree. *Id.* at 716. Joshua Davey, a recent high school graduate, received the scholarship, chose to study at an eligible private Christian college, and decided to double major in pastoral ministries and business management/administration. *Id.* at 717. The pastoral ministries degree was a devotional-theology degree that was excluded under the scholarship program. *Id.* Davey filed suit after being informed he could

---

[1] *Virginia Tuition Assistance Grant Program*, SCHEV.EDU (last accessed July 29, 2025), https://tinyurl.com/546btk6k.

6

not use his scholarship to pursue the devotional-theology degree. *Id.* at 717–18.

The Supreme Court held that Washington's scholarship program did not violate the Free Exercise Clause of the First Amendment. *Id.* at 715, 725. Washington's law did not seek to suppress particular practices in a specific religion, created no sanctions for religious practices, and did not deny ministers the right to participate in the community. *Id.* at 720. Instead, Washington "merely chose[] not to fund a distinct category of instruction." *Id.* at 721. Moreover, rather than show hostility to religion, Washington's constitution and scholarship program permitted students to receive public funds to attend religious schools and take devotional-theology courses. *Id.* at 724–25. The Court noted that "[t]raining someone to lead a congregation is essentially a religious endeavor," and majoring in "devotional theology is akin to a religious calling." *Id.* at 721.

The Supreme Court observed that many states at the time of this country's founding placed into their constitutions "prohibitions against using tax funds to support the ministry." *Id.* at 723. "That early state constitutions saw no problem in explicitly excluding *only* the ministry from receiving state dollars reinforce[d] [the Court's] conclusion that

religious instruction is of a different ilk." *Id.* (emphasis in original). Thus, the Court recognized a long tradition in this country, stretching to its founding, of states prohibiting taxpayer support for religious leaders. *Id.* "Given the historic and substantial state interest at issue," the Court could not conclude that Washington's denial of funding for religious instruction was inherently constitutionally suspect. *Id.* at 726. Davey's claim therefore failed. *Id.*

## III.   Factual Background

Plaintiff-Appellant Bethany M. Hall is a full-time undergraduate student at Liberty University in Lynchburg, Virginia, who recently completed her sophomore year. JA7; Opening Br. 2. Liberty University is "a Christian higher education institution." *Palmer v. Liberty Univ., Inc.*, Nos. 21-2390, 21-2434, 2023 U.S. App. LEXIS 18467, at *3 (4th Cir. June 30, 2023). Before starting classes in August 2023, Hall applied for the VTAG Program through Liberty University's financial aid office. JA11–12. In February 2023, the financial aid office informed Hall that she was eligible to receive the maximum VTAG Program grant for the 2023–2024 academic year, in part because she had identified her intended major as "Music Education: Choral." JA11.

8

In August 2023, Hall informed Liberty University that her major would be a CIP Code 39 program: she notified her university first that she would study "Youth Ministries," and then changed it to "Christian Leadership and Church Ministries." JA11–12. Liberty University's financial aid office subsequently informed Hall that due to her choice of major, she was ineligible to receive a grant through the VTAG Program. JA11–12. Liberty University informed Hall that SCHEV regulations provide that VTAG Program funds "shall be used for undergraduate work 'other than those leading to religious training or theological education.'" JA11–12.

In October 2023, Hall changed to her current major, "Music and Worship" with a focus on Youth Ministries, which is also a CIP Code 39 program. JA12. Hall chose this major "because of her belief and conviction that God is calling her to minister through music and worship to youth." JA13. Liberty University informed Hall that this major was also ineligible for a VTAG Program grant. JA12.

Hall did not receive a VTAG Program grant for the 2023–2024 and 2024–2025 academic years. JA12–13. Hall allegedly remains eligible for the VTAG Program except for her choice of a CIP Code 39 major. JA13.

## IV.   Procedural History

Hall sued Fleming, in his official capacity as the Director of SCHEV, in the Richmond Division of the District Court for the Eastern District of Virginia. JA6. Hall brought her action pursuant to 42 U.S.C. § 1983 and asserts a single claim. JA14–16. Hall alleges that her ineligibility for a VTAG Program grant violates her rights under the Free Exercise Clause of the First Amendment to the U.S. Constitution. JA15. Hall explicitly seeks a decision overruling *Locke*. JA15–16.

As relief, Hall seeks (1) declarations that the portions of the Code of Virginia and the Administrative Code that prohibit VTAG Program grants from going to students pursuing "religious training" or "theological education" are unconstitutional; (2) an injunction enjoining SCHEV from withholding VTAG Program grants from Hall because of her choice of major; (3) an injunction pending the outcome of the litigation requiring SCHEV to pay into an interest-bearing account funds equal to what Hall would have been eligible to receive from the VTAG Program but for her choice of major; and (4) an award of attorney fees. JA16.

Fleming filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that the Supreme

10

Court's decision in *Locke* controlled and foreclosed Hall's claim. JA19, JA22. In her Opposition to the Motion to Dismiss, Hall conceded that *Locke* is still good law and was binding on the district court. JA33.

After the parties completed their briefing, the district court issued a memorandum order that granted Fleming's motion and dismissed Hall's case with prejudice. JA37, JA46. The district court held that *Locke* remains binding precedent and that it lacked the authority to overturn Supreme Court precedent. JA41. The district court applied *Locke* to Hall's claim because her situation was "directly analogous" to that of Davey, which Hall admitted. JA41, JA42–43.

The district court also rejected Hall's contention that the Supreme Court had effectively overruled *Locke* in three of its recent Free Exercise Clause decisions. JA45. Rather, the district court concluded that *Trinity Lutheran Church of Columbia, Inc. v. Comer,* 582 U.S. 449 (2017), *Espinoza v. Montana Department of Revenue,* 591 U.S. 464 (2020), and *Carson v. Makin*, 596 U.S. 767 (2022), reaffirmed *Locke*'s core holding and its application to Hall's case. JA43. The district court noted that even if it agreed with Hall's contention, it was bound to follow *Locke* because the Supreme Court has never overturned that precedent. JA45. As a

11

result, the district court held that SCHEV's administration of the VTAG Program does not violate the Free Exercise Clause by prohibiting the use of state funds for Hall's religious vocational studies. JA45.

Hall then appealed. JA47.

## STANDARD OF REVIEW

This Court reviews *de novo* a district court's grant of a motion to dismiss for failure to state a claim. *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020). To survive a motion to dismiss, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," and must present "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). An appellate court accepts the facts alleged in the complaint as true, but a complaint's legal conclusions "are not entitled to the assumption of truth" and are not sufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Evans v. Chalmers*, 703 F.3d 636, 646 (4th Cir. 2012).

## SUMMARY OF ARGUMENT

Hall failed to state a claim that SCHEV's administration of the VTAG Program violates the Free Exercise Clause by denying her public funds to pursue a religious vocational degree. In *Locke*, the Supreme

Court addressed this exact issue and upheld a state's ability to prohibit state funds from going to religious vocational training.

*Locke* forecloses Hall's claim because her factual and legal situation is indistinguishable from that of Davey, which Hall concedes. Both cases involve undergraduate students at private Christian colleges who chose to pursue religious vocational degrees. Both Davey and Hall were denied state funding due to their choices of major. Both brought Free Exercise Clause challenges to the state laws that barred state funds from supporting students pursuing religious vocational degrees. Accordingly, the district court correctly held that *Locke* is controlling precedent that bars Hall's case.

The district court also properly held that the Supreme Court has never overruled *Locke*. Rather, in *Trinity Lutheran*, *Espinoza*, and *Carson*, the Supreme Court has reaffirmed *Locke*'s core holding that a state does not violate the Free Exercise Clause when it denies public funds to postsecondary students seeking religious vocational degrees. Notably, *Locke* invoked a historic and substantial state interest in not funding the training of clergy that was absent in these three cases.

13

When the Supreme Court has not overruled its applicable precedent, lower federal courts should simply apply that precedent. As *Locke* directly applies to the claims and facts presented by Hall's case, the district court rightly granted Fleming's motion to dismiss.

This Court should affirm.

## ARGUMENT

### I.  *Locke* forecloses Hall's analogous claim.

The district court correctly ruled that the circumstances of Hall's case are directly analogous to those presented in *Locke*, and, accordingly, *Locke* forecloses her claim.

The Supreme Court already addressed an analogous claim in *Locke* and ruled that a state does not violate the First Amendment's Free Exercise Clause when it bars state-appropriated scholarship funds from being used to pursue a degree in devotional theology. *Locke*, 540 U.S. at 715.

Hall's situation is almost identical to the one faced by Davey, which she concedes. JA15, JA33; Opening Br. 2 (acknowledging that "*Locke* appears on point in this matter"). Like Davey, Hall is an undergraduate student at a private Christian college who chose a major that prepares

her for a religious vocation. *Locke*, 540 U.S. at 717; JA12–13. Like Davey, Hall has been denied state funding due to her choice of major. *Locke*, 540 U.S. at 717; JA29. Just as Davey did, Hall brought a suit contending that the state law that bars state funds from supporting students pursuing religious vocational degrees violates the Free Exercise Clause. *Locke*, 540 U.S. at 718; JA14–16. The constitutions of both Virginia and Washington bar the use of public money to pay for religious training. Va. Const. art. VIII, § 11; *Locke*, 540 U.S. at 715–16.

Nevertheless, even more so than Washington, Virginia has been "solicitous in ensuring that its constitution is not hostile towards religion." *Locke*, 540 U.S. at 724 n.8; *see Vlaming v. West Point Sch. Bd.*, 895 S.E.2d 705, 716 (Va. 2023) (observing that the "constitutional guarantees of religious freedom have no deeper roots than in Virginia, where they originated, and nowhere have they been more scrupulously observed" and that "[n]o State has more jealously guarded and preserved the questions of religious belief and religious worship as questions between each individual man and his Maker than Virginia" (internal quotations and citations omitted)). Virginia's law, like Washington's, allows tuition assistance for students attending religious universities

15

and who take courses in religion. *Locke*, 540 U.S. at 724 & n.8; JA8–9. Virginia allows students studying at private sectarian colleges, such as Liberty University, to receive VTAG Program grants. Va. Const. art. VIII, § 11; *Miller v. Ayres*, 198 S.E.2d 634, 642–43 (Va. 1973) (upholding program providing grants to students at religious private colleges against First Amendment challenge); JA9. Indeed, Virginia students, under certain conditions, are eligible for VTAG Program grants if they choose to pursue a second major that provides religious vocational training. 8 Va. Admin. Code § 40-71-10 (definition of "Eligible Program"). In sum, the "factual and legal circumstances" of Hall's case "mirror those presented in" *Locke*. JA43.

Accordingly, the district court correctly held that *Locke* controls Hall's claim, and, as a result, it properly dismissed Hall's case.

## II. The Supreme Court has not overruled *Locke*, and lower federal courts cannot overrule it.

The district court also correctly determined that the Supreme Court has not overruled *Locke*, and instead, in its recent Free Exercise Clause cases, has reaffirmed that *Locke*'s core holding applies to the circumstances of Hall's case. JA43.

Despite *Locke* being binding precedent, Hall asks this Court to overrule it because she considers it to be wrongly decided and inconsistent with subsequent decisions of the Supreme Court. JA15–16; Opening Br. 5, 19. Even if Hall's assessment is correct, the Supreme Court has made clear that when its precedent has "direct application in a case, yet appears to rest on reasons rejected in some other line of decisions," lower federal courts "should follow the case which directly controls, leaving to [the Supreme Court] the prerogative of overruling its own decisions." *Tenet v. Doe*, 544 U.S. 1, 10–11 (2005) (quoting *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989)). Lower courts should not conclude that the Supreme Court's "more recent cases have, by implication, overruled [its] earlier precedent." *Agostini v. Felton*, 521 U.S. 203, 237 (1997).

Moreover, contrary to Hall's assertion, the Supreme Court has not overruled *Locke* in its subsequent decisions. In fact, the Supreme Court's recent Free Exercise Clause precedent has emphasized the continued viability of *Locke*'s core holding. Hall asserts that a trio of Supreme Court cases have "effectively abrogated and overruled *Locke*." JA15–16; Opening Br. 10. They have not.

17

Far from overruling *Locke*, the Supreme Court in the last decade has repeatedly affirmed its core holding in the three cases Hall relies on. In *Trinity Lutheran*, the Supreme Court explained that Washington's restriction on the use of scholarship funds was fundamentally different from Missouri impermissibly denying government funds to a church solely because it is a church. 582 U.S. at 464–65. It noted that opposition to the type of funding at issue in *Locke* "lay at the historic core of the [First Amendment's] Religion Clauses," while there was no similar tradition against churches participating equally in a government program to fund the resurfacing of playgrounds. *Id.* at 465.

Similarly, in *Espinoza*, the Court noted two critical differences between Montana's scholarship program that excluded aid to religious schools and the Washington law at issue in *Locke* that prohibited publicly funded scholarships from being used to prepare students for the ministry. 591 U.S. at 479. First, Montana's no-aid provision prohibited state funds from going to religious schools because they were religious, while the Washington law had "merely chosen not to fund a distinct category of instruction," namely religious vocational training. *Id.* Second, "*Locke* invoked a 'historic and substantial' state interest in not funding the

18

training of clergy." *Id.* at 480 (quoting *Locke*, 540 U.S. at 725). In contrast, no comparable "tradition support[ed] Montana's decision to disqualify religious schools from government aid." *Id.* Rather than overrule *Locke*, the Supreme Court in *Espinoza* affirmed its holding that the Free Exercise Clause is not violated by a law prohibiting the use of state funds for religious vocational training. *See id.* at 479–80.

Finally, in *Carson*, the Court explained that *Locke*'s "reasoning expressly turned on what it identified as the 'historic and substantial state interest' against using 'taxpayer funds to support church leaders.'" 596 U.S. at 788 (quoting *Locke*, 540 U.S. at 722, 725). The Court emphasized that the state funding at issue in *Locke* "was intended to be used to prepare for the ministry," in contrast to Maine's funding, which provided tuition assistance for parents who lived in school districts that did not operate their own secondary schools. *Id.* at 771, 788. The Court noted that *Locke* could "not be read beyond its narrow focus on religious vocational degrees." *Id.* at 789.

Despite *Trinity Lutheran*, *Espinoza*, and *Carson* reaffirming *Locke*'s holding as it applies to her case, Hall attempts to draw an analogy between *Locke*'s current status and the Supreme Court's treatment of

19

*Lemon v. Kurtzman*, 403 U.S. 602 (1971). Opening Br. 15–16. However, the Supreme Court's treatment of *Locke* is not comparable to the Court's hostility to *Lemon* prior to it being described as "abandoned" in *Kennedy v. Bremerton School District*, 597 U.S. 507, 534 (2022). Prior to *Kennedy*, the Supreme Court "expressly declined to apply the [*Lemon*] test" or "simply ignored it." *American Legion* v. *American Humanist Assn.*, 588 U.S. 19, 49 (2019) (plurality opinion) (collecting cases). The Court distancing itself from *Lemon* is unlike its treatment of *Locke* in *Trinity Lutheran*, *Espinoza*, and *Carson*, which, as discussed above, indicated that *Locke* was still good law as to the facts and claims presented in that case.

The bottom line is that the Supreme Court has repeatedly affirmed that *Locke* is good law that permits states to decline to fund religious vocational training. *Locke* directly applies here because Hall has been denied state funds to pursue a religious vocational degree. Accordingly, the district court was required to "simply apply the[] commands" of this Supreme Court precedent. *Payne v. Taslimi*, 998 F.3d 648, 654 (4th Cir. 2021).

For these reasons, the district court correctly held that *Locke* has not been overruled and that it was required to apply *Locke* and dismiss Hall's case.

## CONCLUSION

This Court should affirm the judgment of the district court.

Respectfully submitted,

A. SCOTT FLEMING, IN HIS OFFICIAL CAPACITY AS DIRECTOR OF THE STATE COUNCIL OF HIGHER EDUCATION FOR VIRGINIA

By: _/s/ Christopher P. Bernhardt_

CHRISTOPHER P. BERNHARDT
*Assistant Attorney General*

JASON S. MIYARES
  *Attorney General*

THOMAS J. SANFORD
  *Deputy Attorney General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 371-0977 – Telephone
(804) 371-2087 – Facsimile
cbernhardt@oag.state.va.us
rclaibornejr@oag.state.va.us

July 31, 2025

JACQUELINE C. HEDBLOM
  *Senior Assistant Attorney*
  *General/Trial Section Chief*

CHRISTOPHER P. BERNHARDT
(VSB No. 80133)
ROBERT S. CLAIBORNE, JR.
(VSB No. 86332)
  *Assistant Attorneys General*

*Counsel for Defendant-Appellee*

21

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 3,826 words, excluding the parts of the brief exempted by Rule 32(f). This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook typeface.

*/s/ Christopher P. Bernhardt*
CHRISTOPHER P. BERNHARDT

## CERTIFICATE OF SERVICE

I certify that on July 31, 2025, I electronically filed the foregoing brief with the Clerk of this Court by using the appellate CM/ECF system. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

*/s/ Christopher P. Bernhardt*

CHRISTOPHER P. BERNHARDT